440 A.2d 1198

**COMMONWEALTH of Pennsylvania,**

v.

**Dale Raymond WHITE, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1981.

Filed Jan. 22, 1982.

Petition for Allowance of Appeal Denied Aug. 10, 1982.

14

C. Roy Weidner, Jr., Lemoyne, for appellant.

Edgar B. Bayley, Jr., District Attorney, Carlisle, for Commonwealth, appellee.

Before SPAETH, WIEAND and JOHNSON, JJ.

JOHNSON, Judge:

This is an appeal from an order dismissing Appellant's petition to withdraw three guilty pleas. For the following reasons, we affirm.

Appellant pleaded guilty to a charge of Unauthorized Use of Automobiles and Other Vehicles.[1] Subsequently, Appellant entered two additional guilty pleas to charges of Crimi-

1. 18 Pa.C.S.A. § 3928.

nal Attempt[2] and Escape.[3] Appellant was sentenced on all three charges. Appellant filed neither post-sentence motions nor a direct appeal.

Nine months later, Appellant filed a petition under the Post Conviction Hearing Act[4] (PCHA) to withdraw his guilty pleas alleging ineffective assistance of counsel. The court dismissed the PCHA petition, from which order an appeal was filed. We granted Appellant leave to file a petition to withdraw the guilty pleas nunc pro tunc.[5] Appellant filed the aforesaid petition, and a hearing was conducted thereon. This is an appeal from the order of October 16, 1980, which dismissed Appellant's petition.

Appellant raises two issues in this appeal. First, were the guilty pleas invalid because Appellant was not sufficiently apprised of the nature of the charges? Second, did the guilty pleas constitute valid waivers of Appellant's right to a jury trial?

## I.

We proceed to consider Appellant's first issue. Preliminarily, we note that Appellant was represented by counsel at all three guilty plea colloquies. At the colloquy on February 16, 1977, the prosecution agreed to accept a plea of guilty to unauthorized use of a stolen motorcycle, although Appellant had been charged with Receiving Stolen Property.[6] Receiving Stolen Property is a felony of the third degree,[7] for which the maximum sentence is seven (7) years imprisonment,[8] while the maximum sentence for Unauthorized Use, a

2. *Id.*, § 901.

3. *Id.*, § 5121.

4. 19 P.S. § 1180–1 et seq. (Supp. Pamphlet 1965–1980 [1981–82]).

5. *Commonwealth v. White*, 277 Pa.Super.Ct. 109, 419 A.2d 685 (1980).

6. 18 Pa.C.S.A. § 3925.

7. *Commonwealth v. Belcher*, 233 Pa.Super.Ct. 212, 335 A.2d 505 (1975). *See* 18 Pa.C.S.A. §§ 3903(a), 3925.

8. 18 Pa.C.S.A. § 1103(3).

misdemeanor of the second degree,[9] is two (2) years.[10] By pleading guilty to Unauthorized Use, Appellant was assured that his maximum allowable sentence was reduced by five (5) years.

 The court explained Unauthorized Use as follows:

THE COURT: You understand by entering your plea you are admitting that you *used* this vehicle, this motorcycle, knowing that you did not have the permission or authority of the owner to use it? [Emphasis added.]

MR. WHITE: Yes, sir.

The offense is defined as follows:

*Unauthorized use of automobiles and other vehicles*

. . . A person is guilty of a misdemeanor of the second degree if he *operates* the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner.[11] [Emphasis added.]

Because the court explained the offense of Unauthorized Use as the *use*, rather than the *operation*, of the vehicle, Appellant contends that this colloquy was defective. Our review of the record persuades us that Appellant knowingly, intelligently, and voluntarily entered into this plea with a thorough understanding of the nature of the charge. Appellant's brief does not present any arguments that would persuade us to reach a contrary conclusion, and we note that the cases cited therein are not applicable to the instant case.

 Appellant also contends that the foregoing guilty plea was invalid because the trial judge did not inform Appellant of the following defense that is provided by statute:

It is a defense to prosecution under this section that the actor reasonably believed that the owner would have consented to the operation had he known of it.[12]

9. *Id.*, § 3928(a).

10. *Id.*, § 1104(2).

11. 18 Pa.C.S.A. § 3928(a).

12. 18 Pa.C.S.A. § 3928(b).

As discussed above, if Appellant had not pleaded guilty to Unauthorized Use, he would have been tried for Receiving Stolen Property. Thus the defense to Unauthorized Use would have been immaterial. Also, we note that the court's failure to advise Appellant of all possible defenses does not *per se* render the plea invalid. *Commonwealth v. Johnson*, 460 Pa. 169, 177, 331 A.2d 473, 476–7 (1975); *Commonwealth v. Stokes*, 264 Pa.Super.Ct. 515, 519, 400 A.2d 204, 206 (1979). Here, there is no suggestion in the record that Appellant had any belief that the owner of the motorcycle would have consented to its operation had he known of it. We find this contention to be without merit.

■ Appellant next contends that the plea to attempt to commit robbery was invalid because he was not informed of the elements of the crime. The court described the offense as follows:

> THE COURT: The offense of robbery, of course, is pretty evident I think. It constitutes the attempt to take property from another by putting them in fear and by use of force, and at the time of the attempt the person doing so is in full possession of his mental capabilities. Do you have any questions about any of the, about the nature or any of the elements of criminal attempt to commit robbery?
>
> MR. WHITE: No, sir.

We find that the foregoing description adequately apprised Appellant of the elements of attempt to commit robbery.

■ The third prong of Appellant's first issue is the claim that the description of escape was inadequate because the judge did not inform Appellant of the elements of this charge. The court stated:

> THE COURT: You have heard the statements of the district attorney as to what occurred, namely that you were here in this court for a presentence investigation and on the way to prison, without permission of the guards that had you in custody you slipped a handcuff and disappeared for a while. Do you have any questions as to the nature and elements of the offense of escape?

MR. WHITE: No.

Section 5121(a) of 18 Pa.C.S.A. defines the elements of escape as follows:

(a) *Escape.*—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

The court's colloquy adequately informs Appellant of the nature of the crime of escape to which he pleaded guilty.

Appellant cites *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), for the proposition that each element of a crime must be explained in addition to the factual basis of the charge. *Ingram* must be distinguished from the instant case. In *Ingram* the defendant pleaded guilty to murder, but the colloquy merely related that defendant shot and killed the victim. Since the essential element of malice was completely omitted by the trial court in *Ingram*, the Supreme Court held that the aforesaid plea lacked the essential elements of the crime. In the instant case, the factual context related by the court clearly indicates the essential elements of the crime of escape. Thus this colloquy was not inadequate.

## II.

We proceed to consider Appellant's second issue—that the three pleas did not constitute valid waivers of Appellant's right to a jury trial because the court did not inform Appellant, first, that the jurors were chosen from members of the community, and second, that there are twelve (12) jurors.

At the colloquy on February 16, 1977, the court stated:
THE COURT: Now, you are entitled to a jury trial in this case, and, of course, would be presumed innocent until the proofs in the case showed your guilt beyond a reasonable doubt. You would assist your counsel in selecting the jury. The jury would hear the evidence and you could not be convicted unless unanimously the jury reached a con-

clusion as to your guilt beyond a reasonable doubt. Do you understand that?

MR. WHITE: Yes, sir.

The judge informed Appellant that he would assist his counsel in selecting a jury. Although the judge did not specifically state that the jurors are members of the community, this fact is clearly implied from the idea of selection. If a defendant knows that he can assist his attorney in selecting the jury, he understands that he selects the jurors from a larger group of people. Whether or not this group is given the nomenclature of "members of the community," "peers," or "panel" is placing form before substance. If the defendant knows that he can select the jurors from a group, the title given to the group does not assist the defendant to understand more fully the essential elements of a jury trial.

The court in *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), suggested the essential elements of a jury trial:

> [B]asic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

*Id.*, 454 Pa. at 373, 312 A.2d at 600. Subsequent opinions have bestowed upon *Williams* an interpretation of the concept of a jury trial that, at times, has been too literalistic. *See Commonwealth v. Fortune*, 289 Pa.Super.Ct. 278, 433 A.2d 65 (1981), where Judge HESTER sets forth an excellent review of the prior case law in this area.

In *Commonwealth v. Fortune*, the colloquy—like that in the instant case—did not specifically inform the defendant that the jurors are chosen from members of the community —defendant's peers. The Superior Court, sitting en banc, held, with one judge dissenting, that the lower court's failure to use either "peers" or "members of the community" to inform the defendant of his right to a jury trial did not constitute error. *Id.*, 289 Pa.Super. at 290, 433 A.2d at 71. *Fortune* is on point with the instant case.

■ Appellant next contends that his pleas did not constitute valid waivers of his right to trial by jury because the lower court did not expressly inform him that the jury would consist of twelve members. Both Appellant and the Dissenting Opinion in this case rely upon *Williams* and its predecessor, *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938), for the apparent proposition that a valid guilty plea colloquy must contain a specific reference to the fact that juries are composed of twelve persons. Our review of both *Fugmann* and *Williams* does not lead us to extend the holdings of those cases that far.

Justice MAXEY's consideration of the essential elements of a trial by jury, in *Fugmann*, arose in the context of a claim that the seating of two alternate jurors [13] in a capital case "constituted a violation of defendant's constitutional right." Justice MAXEY, writing for the court, with one of the then six justices concurring in the judgment, rejected this particular assignment of error on the basis that the fundamental law preserves the *substance* of the right, and that "details of administration" which leave the enjoyment of the right unaffected are "of no constitutional concern." The court found that the seating of the alternate jurors left "the jewel of Anglo-Saxon jurisprudence" untouched and undimmed and affected only its "setting." 330 Pa. at 29, 198 A. at 111. By way of dicta, the court set forth *six* essentials of a trial by jury:

The essentials of a trial by jury of a defendant in a criminal case as known at the common law were: (1) a jury composed of twelve *eligible* persons duly summoned, sworn and impanelled for the trial of the issue; (2) a plea entered; (3) an ample right of challenge both for cause and peremptorily, secured to defendant; (4) a full, fair and public trial 'under the superintendence of a judge empowered to instruct them on the law and to advise

13. As provided by the Act of May 1, 1935, P.L. 127, § 1, 17 P.S. § 1153, repealed by the Act of April 28, 1978, P.L. 202, No. 53 § 2(a) [1156], effective June 27, 1980. Provisions for alternate jurors are currently to be found in the Pennsylvania Rules of Criminal Procedure, Rule 1108, 42 Pa.C.S.A. (Pamp.1981).

them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law of the evidence'; (5) proper and sworn testimony for the jury's consideration; (6) unanimity of the vote supporting the verdict.

A departure from *any* of these essentials would be a deprivation of 'the right to trial by jury.'

*Id.*, 330 Pa. at 29, 198 A. at 111 (footnote and citations omitted) (emphasis added).

Appellant does not suggest, nor could he, that all of the six essential elements of a *jury trial* as pronounced in *Fugmann* have been replicated in the present-day requirements for either a guilty plea colloquy or, for that matter, in the requirements for a valid waiver of jury trial where the defendant proceeds to trial, nonjury, as in *Williams*.[14] Our Supreme Court, in *Williams*, made specific citation to *Fugmann* in setting forth its understanding of the essential ingredients of a jury trial which are necessary to understand the significance of the right that is being waived. There, Justice NIX said:

These essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel. In *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938) these rights were held to be a necessary and integral part of the Pennsylvania Constitutional provision requiring that the 'trial by jury shall be as heretofore, and the right thereof remain inviolate . . . .'

454 Pa. at 373, 312 A.2d at 600 (citation and footnote omitted).

**14.** The Commonwealth, in its Brief, seeks to distinguish *Williams* on the basis that it presented a question of waiving a jury trial in favor of a nonjury trial, whereas the instant case involves the entry of a guilty plea after extensive advice by the judge and defense counsel following plea bargaining. We have already decided that the requirements articulated in *Williams* are equally applicable to a guilty plea colloquy. *Commonwealth v. Washer*, 253 Pa.Super.Ct. 209, 214, 384 A.2d 1305, 1308 (1978).

We agree with the writer of the Dissenting Opinion that a knowing and intelligent waiver necessarily requires that a defendant be adequately informed of all those essential ingredients of a jury trial which are necessary to understand the importance of the right being relinquished. *Commonwealth v. Washer*, 253 Pa.Super.Ct. 209, 214, 384 A.2d 1305, 1308. We are unable to agree that either our Supreme Court, through *Williams* or this Court, through its opinions interpreting *Williams*, has elevated the element—that a jury is composed of twelve persons—to the level of a constitutional necessity in a guilty plea colloquy.

It is enough to observe that, in our view, a clear distinction must be maintained between the essential elements of a *jury trial*, on the one hand, and the essential elements of a *guilty plea colloquy* leading up to a knowing and intelligent waiver of the right to be tried by either judge or jury, on the other hand.

Appellant cites *Commonwealth v. Coxson*, 262 Pa.Super.Ct. 14, 396 A.2d 460 (1978), to support his contention that the court must specifically inform a defendant that a jury is composed of twelve members. In *Coxson*, Judge VAN der VOORT, in reversing a judgment of sentence upon a finding of an inadequate colloquy, said:

> In *Williams*, the court held that the trial court, when accepting a guilty plea, must be assured that the criminal defendant knows that the 12 jurors would be chosen from members of the community, that the accused would be permitted to participate in the selection of the jury panel, and that the jury verdict would have to be unanimous. If these factors are not explained to the accused during the guilty plea colloquy, the court cannot be assured that the waiver of a right to jury trial was knowingly or intelligently made.

*Id.*, 262 Pa.Super. at 16, 396 A.2d at 461.

For the reasons set forth above, we are not disposed to agree that the use of the quantifier, 12, before the word "jurors" in the quoted passage was intended to modify *Williams* by adding another element—that there are *twelve*

*jurors*—to the concept of a valid colloquy as delineated in *Williams*. By referring with approval to the elements specified in *Williams*, this court, in *Coxson*, merely altered the language used by *Williams* from "the jury" to "the 12 jurors."

We cannot perceive that any good reason exists to superimpose upon the guilty plea colloquy a requirement that the accused must be instructed concerning all attributes of a trial by jury, including the fact that a jury consists of twelve persons. In the instant case, Appellant was fully cognizant of the options available to him. He discussed them with his attorney and, because of favorable terms contained in plea bargains offered by the Commonwealth, decided to forego trials by jury and enter pleas of guilty. Even at the hearing on his application to withdraw his pleas, Appellant did not pretend that he was unaware that a criminal jury consisted of twelve persons; and his counsel has not suggested otherwise.

For the foregoing reasons, we conclude that[6] the colloquy of February 16, 1977, was not defective.

We proceed to consider the two colloquies of May 16, 1978. At the first colloquy, Appellant was informed both that he and his counsel would participate in the selection of the jury and that the jury would be selected from a panel:

> THE COURT: And if you desire to have a jury trial we have a jury panel here, you and your counsel would participate in the selection of the jury. After the jury was selected they would hear the evidence against you and any evidence that you desired to offer, and because you are presumed innocent until proved guilty beyond a reasonable doubt that jury could not convict you unless unanimously they concurred as to your guilt beyond a reasonable doubt. Do you understand that?
>
> MR. WHITE: Yes, sir.

N.T. 5/16/78, 4–5.

Under *Commonwealth v. Bouie*, 263 Pa.Super.Ct. 556, 398 A.2d 716 (1979), this language clearly satisfies the require-

ments of *Williams.* In *Bouie,* the trial judge instructed the defendant both that the jury would be selected from "a panel which has been empaneled" and "from a larger group." *Id.,* 263 Pa.Super.Ct. at 558, 398 A.2d at 717. On review, the Superior Court held that this instruction was adequate:

> Nothing in the *Williams* decision indicates that the precise language used in *Williams* must be read to the accused as long as the "essential ingredients" of a jury trial are explained to an accused.

*Id.,* 263 Pa.Super. at 558–559, 398 A.2d at 717. Although *Commonwealth v. Friedman,* 268 Pa.Super.Ct. 278, 407 A.2d 1355 (1979), held that a similar instruction was inadequate, *Friedman* was expressly disapproved by the Superior Court, sitting en banc, in *Commonwealth v. Fortune,* 289 Pa.Super.Ct. at 291, 433 A.2d at 71.

Since a second colloquy was conducted on May 16, 1978, Appellant already had been informed of the essential elements of a jury trial. It would surely place form before substance to demand that the court must reiterate every element of a colloquy that had been conducted only a few hours before the second colloquy. Thus the colloquies that were conducted on May 16, 1978, are not defective.

A careful review of the record in the instant case indicates that Appellant's guilty pleas were entered voluntarily, intelligently, and knowingly, with an understanding of both the nature of the charges and the elements of the jury trial, which he waived. Appellant has failed to demonstrate the existence of any "prejudice on the order of manifest injustice" that would permit him to withdraw those pleas after sentences had been imposed. *Commonwealth v. Stokes,* 264 Pa.Super.Ct. 515, 517–518, 400 A.2d 204, 205 (1979).

To require, in the instant case, that the trial judge must adhere to a computer-like checklist of questions is to place form above substance and to make a mockery of justice by a blind insistence upon technicalities.

> "The rule that a complete colloquy be given to each defendant, is not an end in itself; rather, it is intended to

protect a defendant's constitutional rights, so that each defendant understands his or her constitutional rights and knowingly and voluntarily waives those rights. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). There is, however, no constitutionally prescribed form for how these rights are to be protected." [Footnote omitted.]

*Commonwealth v. Harris*, 286 Pa.Super.Ct. 601, 607, 429 A.2d 685, 688 (1981).

For the foregoing reasons the order of October 16, 1980, which dismissed Appellant's PCHA petition, is affirmed.

WIEAND, J., files a concurring opinion.

SPAETH, J., files a dissenting opinion.

WIEAND, Judge, concurring:

I concur that the order dismissing appellant's P.C.H.A. petition should be affirmed.

Dale Raymond White entered separate, negotiated pleas of guilty to attempted robbery,[1] escape,[2] and unauthorized use of a motor vehicle.[3] The colloquies conducted by the trial judge were sufficient to demonstrate that appellant's pleas of guilty were entered knowingly, intelligently and voluntarily. He has failed to prove in the instant P.C.H.A. proceedings any prejudice on the order of manifest injustice that would recommend permitting him to withdraw those pleas of guilty after sentences had been imposed. See: *Commonwealth v. Stokes*, 264 Pa.Superior Ct. 515, 400 A.2d 204 (1979). Therefore, the trial court properly refused to allow appellant to withdraw his pleas of guilty.

The decision in *Commonwealth v. Fortune*, 289 Pa.Superior Ct. 278, 433 A.2d 65 (1981) is dispositive, as Judge Johnson

1. 18 Pa.C.S. §§ 901, 3701.

2. 18 Pa.C.S. § 5121.

3. 18 Pa.C.S. § 3928. An initial charge of receiving stolen property was reduced to unauthorized use of a vehicle pursuant to plea bargain.

and Judge Spaeth agree, of appellant's contention that his pleas were not intelligently entered because the trial judge allegedly failed to advise him that the right to be tried by jury meant trial by jurors chosen from members of the community. See also: *Commonwealth v. Bouie*, 263 Pa.Superior Ct. 556, 398 A.2d 716 (1979).

It is not essential to the entry of a knowing and intelligent guilty plea that the colloquy be further encumbered by requiring an instruction that a jury in a criminal case consists of "twelve" persons. The guilty plea colloquy, as most trial judges know, has already become "so extensive— so all-encompassing—so unrealistic—so dreamlike, as to have become an absurdity." McClelland, "The Guilty Plea Absurdity," Pennsylvania Law Journal, September 29, 1980, Vol. III, No. 37, p. 10. I perceive no value to a technical addition which elevates form over substance and which assumes that criminal defendants are idiots and their attorneys incompetent.

In *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), the Supreme Court considered the adequacy of the colloquy preceding a waiver of jury trial and an agreement to be tried by a judge sitting without jury. The Court there concluded that "basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." Several observations may be in order. First, the Supreme Court did not hold that the number "twelve" was basic to trial by jury. See and compare: Pa.R.Crim.P. 1103. Secondly, the Supreme Court has not superimposed upon a guilty plea colloquy—not by rule and not by decision—the requirement announced in *Williams* for the colloquy preceding a trial without jury.

The Superior Court, however, has held that *Williams* is equally applicable to a guilty plea colloquy. *Commonwealth v. Washer*, 253 Pa.Superior Ct. 209, 384 A.2d 1305 (1978). Despite the absence of a controlling Supreme Court decision, I am bound to apply the holding of the Superior Court,

sitting en banc in *Washer.* However, I do not feel constrained to expand that holding and require that a guilty plea colloquy contain advice that a jury consists of twelve persons. There are many aspects of the right to be tried, with or without a jury, which need not be detailed by a court before an accused can enter a knowing and intelligent plea of guilty. To require that a guilty plea colloquy include all the procedural and evidentiary rights which will accrue to a defendant if he elects to go to trial will unnecessarily impose upon guilty pleas a burden that will most certainly become as impossible as it is absurd.

The absence from the guilty plea colloquy of the precise number of jurors who will hear evidence and determine a defendant's guilt will not render an otherwise intelligent plea of guilty unintelligent. This is readily apparent from the circumstances of the instant case. Appellant was fully aware of the options available to him. He discussed them with his attorney and, because of the favorable terms of plea bargains offered by the Commonwealth, decided to forego trials, whether with or without jury, and enter pleas of guilty. Even appellant did not pretend during the hearing on his P.C.H.A. petition that he was unaware that a jury consisted of twelve persons or that the failure of the trial judge to use that magic number made a difference in his several decisions to plead guilty. On appeal, his counsel has not contended otherwise. Indeed, he has conceded that appellant proved no prejudice from the trial court's failure to use the word "twelve." Therefore, I agree with Judge Johnson that there was here no manifest injustice that needs to be corrected by allowing appellant to withdraw his pleas of guilty. To do so under the circumstances of this case would make a mockery of justice and would further erode public confidence in a system perceived as allowing technical rules to interfere with the ascertainment of truth.

SPAETH, Judge, dissenting:

As the majority notes, appellant challenges the validity of his guilty plea on two grounds: first, that the trial court did

not inform him that the jurors would be chosen from the community and would be his peers; and second, that the trial court did not inform him that a jury consists of twelve persons. I agree that *Commonwealth v. Fortune*, 289 Pa.Superior Ct. 278, 433 A.2d 65 (1981), supports the majority's rejection of the first ground. However, I am unable to agree with the majority's rejection of the second ground.

In *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), the Supreme Court held that a defendant in a criminal case should not be permitted to waive a jury unless the record demonstrated that

> he knew the essential ingredients of a jury trial which are necessary to understand the significance of the right he was waiving. These essential ingredients of a jury, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

*Id.*, 454 Pa. at 373, 312 A.2d at 600.

The majority reasons that because this statement does not specifically refer to the requirement that a jury must consist of twelve persons, that requirement is not an "essential ingredient" of a jury trial of which the defendant must be informed. In other words, the majority reads *Williams's* silence on the requirement that a jury must consist of twelve persons as an *affirmative statement* that there is no need to inform the defendant of the requirement. This reasoning, I submit, reads into *Williams* something that the Court could not have intended.

Although the Court in *Williams* did not state that the defendant must be told that a jury consists of twelve persons, it did not have to, for the defendant had been told that "he could have a jury trial in which twelve men would decide his guilt or innocense." *Id.*, 454 Pa. at 373, 312 A.2d at 600. Moreover, the Court cited as its authority *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938), and in *Fugmann* the Court said:

The essentials of a trial by jury of a defendant in a criminal case as known at the common law were: (1) a jury composed of twelve eligible persons duly summoned, sworn and impanelled for the trial of the issue ....

*Id.*, 330 Pa. at 29, 198 A. at 111.

Until today, the essentials of a trial by jury as established by *Williams* and *Fugmann* have been observed by the Pennsylvania courts. In *Commonwealth v. Coxson*, 262 Pa.Superior Ct. 14, 396 A.2d 460 (1978), for example, this court said:

In *Williams* the court held that the trial court, when accepting a guilty plea, must be assured that the criminal defendant knows that the 12 jurors would be chosen from members of the community .... If these factors are not explained to the accused during the guilty plea colloquy, the court cannot be assured that the waiver of a right to jury trial was knowingly or intelligently made.

*Id.*, 262 Pa.Super. at 16, 396 A.2d at 461.

*See also Commonwealth v. Harris*, 488 Pa. 141, 411 A.2d 494 (1979); *Commonwealth v. Fortune*, 289 Pa.Superior Ct. 278, 433 A.2d 65 (1981); *Commonwealth v. Tami*, 264 Pa.Superior Ct. 535, 400 A.2d 214 (1979); *Commonwealth v. Bouie*, 263 Pa.Superior Ct. 556, 398 A.2d 716 (1979); *Commonwealth v. Friedman*, 268 Pa.Superior Ct. 278, 407 A.2d 1355 (1979); *Commonwealth v. Guenzer*, 255 Pa.Superior Ct. 587, 389 A.2d 133 (1978).

In holding, for the first time, that a defendant may waive a jury even though he does not know how many persons a jury consists of, the majority seems to assume, either that a jury always consists of the same number of persons, or that what the number is is not important. Neither assumption is warranted.

The United States Supreme Court has examined the number of jurors required by the Constitution, *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Colgrove v. Battin*, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973); *Ballew v. Georgia*, 435 U.S. 223, 99 S.Ct. 1029, 55 L.Ed.2d 234 (1978), and has concluded that while "the 12 man requirement cannot be regarded as an indispensable

component of the Sixth Amendment," *Williams v. Florida,
supra* 399 U.S. at 100, 90 S.Ct. at 1905, any reduction below
six would violate the Sixth and Fourteenth Amendments,
*Ballew v. Georgia, supra.* In reaching this conclusion the
Court recognized that one function of a jury is to prevent
oppression by the government:

> Providing an accused with the right to be tried by a
> jury of his peers gave him an inestimable safeguard
> against the corrupt or overzealous prosecutor and against
> the compliant, biased, or eccentric judge." *Duncan v.
> Louisiana,* supra [391 U.S. 145], at 156 [88 S.Ct. 1444 at
> 1451], 20 L.Ed.2d at [491] 500. Given this purpose, the
> essential feature of a jury obviously lies in the interposi-
> tion between the accused and his accuser of the common-
> sense judgment of a group of laymen, and in the commu-
> nity participation and shared responsibility that results
> from that group's determination of guilt or innocence.
> The performance of this role is not a function of the
> particular number of the body that makes up the jury. To
> be sure, the number should probably be large enough to
> promote group deliberation, free from outside attempts at
> intimidation, and to provide a fair possibility for obtaining
> a representative cross-section of the community.

*Williams v. Florida, supra* at 100, 90 S.Ct. at 1905.

On the basis of these decisions, several States have elected
to reduce the size of their juries to six.[1] Pennsylvania,
however, has continued to require that in a criminal case the
jury must consist of twelve persons. Only with the consent
of his attorney, and the approval of the judge, may a
defendant agree to a jury of less than twelve but not less
than six persons. *See* Pa.R.C.P. 1103.[2] Therefore, while the

---

1. Among these States are: Colorado, Florida, Georgia, Indiana, Iowa,
Kansas, Kentucky, Louisiana and Massachusetts. *See: Williams v.
Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Ballew v.
Georgia,* 435 U.S. 223 (1978) at n. 43, 99 S.Ct. 1029 at n. 43, 55
L.Ed.2d 234; Edelstein, *Jury Size Question in Pennsylvania,* 53 Tem-
ple Law Quarterly 89 (1980).

2. In Pennsylvania the jury has consisted of twelve persons since
1682, when William Penn and a panel of free men adopted a docu-

32

twelve person jury is not unique to Pennsylvania, it is a distinctive aspect of Pennsylvania jurisprudence, of which the defendant should be informed. Unless he is so informed, he cannot "understand the significance of the right he [is] waiving." *Commonwealth v. Williams, supra* 454 Pa. at 373, 312 A.2d at 600.

The order of the lower court should be reversed.

ment known as the "Laws Agreed Upon in England." *See,* Edelstein, *supra* n. 1.